## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LISA G. MARTIN-BEST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-13-381-KEW |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

### OPINION AND ORDER

Plaintiff Lisa G. Martin-Best (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on March 1, 1961 and was 50 years old at the time of the ALJ's decision. Claimant obtained her GED, completed some college and some vocational training. Claimant has worked in the past as a certified nurse's aide. Claimant alleges an inability to work beginning April 21, 2010 due to limitations resulting from low back pain, back and leg spasms, a weak ankle, leg numbness, irritable bowel syndrome, and anxiety attacks.

**Procedural History**

On June 1, 2010, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On November 3, 2011, an administrative hearing was held before Administrative Law Judge ("ALJ") John Belcher in Tulsa, Oklahoma. He issued an unfavorable decision on December 2, 2011. The Appeals Council denied review of the ALJ's decision on June 24, 2013. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of light work with restrictions.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to properly consider, weigh, and evaluate the medical evidence; (2) ignoring and minimizing Claimant's impairments at steps two, three,

four, and five; and (3) failing to perform a proper credibility determination.

## Evaluation of the Medical Evidence

In his decision, the ALJ found Claimant suffered from the severe impairments of degenerative disc disease of the lumbosacral spine, major depressive disorder with psychotic features, PTSD, and history of polysubstance abuse. (Tr. 18). The ALJ determined Claimant retained the RFC to perform light work except she could only occasionally bend and stoop, frequently climb stairs, ladders, ropes, and scaffolding, balance, crouch, or crawl, perform simple tasks, superficial contact with co-workers and supervisors and no contact with the public. (Tr. 20).

After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of bench assembler, motel housekeeper, and poultry processor, all of which the vocational expert testified existed in sufficient numbers nationally and regionally. (Tr. 23). The ALJ, therefore, concluded Claimant was not disabled. (Tr. 23-24).

Claimant contends the ALJ failed to properly evaluate the opinion of Dr. Melinda Shaver, accepting only the portion of the opinion which ostensibly supported a finding of non-disability while ignoring the portion that did not support it. On August 26, 2010, Dr. Shaver conducted a consultative mental status examination of

5

Claimant. She found Claimant's sensorium to be clear, Claimant was oriented, memory was good, knowledge of general information was good, intelligence was average, insight was good, and judgment was good. She diagnosed Claimant with PTSD and major depressive disorder, severe, with psychotic features. She assessed Claimant's GAF at 42. Her prognosis was guarded, stating "[Claimant] is receiving mental health treatment but it appears that the treatment is not intensive enough to help her cope with her symptoms. She discussed finding another physician." (Tr. 355). The ALJ gave Dr. Shaver's opinion "great weight." He accepted Dr. Shaver's findings but concluded that "[s]he did not offer an opinion about the claimant's mental issue and her employability." (Tr. 22).

The ALJ's statement was not untrue. While Dr. Shaver offered a diagnosis and prognosis, she did not provide a functionality review. This simply means the ALJ accepted Dr. Shaver's analysis as far as it went. The focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. See e.g. <u>Coleman v. Chater</u>, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment.); <u>Higgs v. Bowen</u>, 880 F.2d 860, 863 (6th Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the condition), <u>Madrid v. Astrue</u>, 243 Fed.Appx. 387,

6

392 (10th Cir. 2007)(the diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work); Scull v. Apfel, 221 F.3d 1352 (10th Cir. 2000)(unpublished), 2000 WL 1028250, 1 (disability determinations turn on the functional consequences, not the causes of a claimant's condition). No error is attributed to the manner in which the ALJ addressed Dr. Shaver's report.

Claimant also states the ALJ erred in not addressing the GAF which Dr. Shaver determined. Without doubt, a low GAF is not conclusive on the issue of whether a claimant is unable to perform the necessary functions of employment. "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning." Langley v. Barnhart, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004). The Tenth Circuit through a series of unpublished decisions has made it clear that the failure to discuss a GAF alone is insufficient to reverse an ALJ's determination of non-disability. *See*, Lee v. Barnhart, 2004 WL 2810224, 3 (10th Cir. (Okla.)); Eden v. Barnhart, 2004 WL 2051382, 2 (10th Cir. (Okla.)); Lopez v. Barnhart, 2003 WL 22351956, 2 (10th Cir. (N.M.)). The foundation for this statement is the possibility that the resulting impairment may only relate to the claimant's social rather than occupational

sphere.  Lee, *supra* at 3.  However, a GAF of 50 or less does suggest an inability to keep a job.  Id. citing Oslin v. Barnhart, 2003 WL 21666675, 3 (10th Cir. (Okla.)).  Specifically, the DSM-IV-TR, explains that a GAF between 31 and 40 indicates "[s]ome impairment in reality testing or communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood."  A GAF between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job)."  Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

An ALJ is required to consider all relevant evidence in the record.  Soc. Sec. R. 06-03p.  He is not, however, required to discuss every piece of evidence in the record.  Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  A GAF score may be of considerable help to the ALJ in formulating the RFC but it is not essential to the RFC's accuracy and "taken alone does not establish an impairment serious enough to preclude an ability to work." Holcomb v. Astrue, 2010 WL 2881530, 2 (Okla.)(unpublished opinion) citing Howard v. Comm. of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002).  This Court finds no error in the ALJ's failure to utilize

8

the GAF scores in reaching a decision.

Claimant next asserts the ALJ improperly "appears to have given the State Agency non-examining physicians' opinions greater weight than those of CE Dr. Shaver." Actually, the ALJ accepted the opinions on functional ability offered by the State Agency physicians because Dr. Shaver did not provide opinions on functionality. This fact did not lessen the weight given to Dr. Shaver's analysis as far as it went.

Dr. Janice B. Smith completed a Mental RFC Assessment form on Claimant on October 4, 2010. She found Claimant had marked limitations in the areas of the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to interact appropriately with the general public. (Tr. 233-34). She concluded Claimant could perform simple tasks with routine supervision, could relate to supervisors and peers on a superficial work basis, could not relate to the general public, and could adapt to a work situation. (Tr. 235). The ALJ found these findings to be consistent with his RFC determination. (Tr. 22). This Court finds no error in the weight afforded this opinion as opposed to the "great weight" given to Dr. Shaver's findings - as far as they went.

Claimant also contends the ALJ failed to address various degenerative conditions in Claimant's spine and joints. On the

9

contrary, the ALJ acknowledged the consultative report of Dr. Andrew F. Revelis dated August 16, 2011. (Tr. 21-22). Dr. Revelis found Claimant had full range of motion in her cervical and lumbar spines, negative straight leg raising bilaterally, negative Patrick's, strength 5/5 in bilateral upper and lower extremities, deep tendon reflexes were bilateral and symmetrical, and no focal or sensory deficit noted (Tr. 494). The ALJ reviewed these finding, adopting many, along with those of Dr. Shaver and Dr. John Main. The ALJ's RFC findings that Claimant could perform light work were not inconsistent with the medical findings of these sources. No error is found in the assessment of Claimant's physical impairments.

**Step Two, Three, Four, and Five Assessment**

Claimant asserts the ALJ failed to include all of her impairments in the hypothetical questioning of the vocational expert. In addition to the conditions already discussed in this Opinion and Order, Claimant recites a litany of additional conditions including IBS, anxiety, panic disorder, vertigo, dizziness, and insomnia – none of which has Claimant established as affecting her ability to engage in basic work activity.

"Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's

decision." Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991). In positing a hypothetical question to the vocational expert, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ. Talley v. Sullivan, 908 F.2d 585, 588 (10th Cir. 1990). Additionally, the hypothetical questions need only reflect impairments and limitations borne out by the evidentiary record. Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996). The ALJ's questioning effectively mirrored his RFC findings with precision and the impairments which were demonstrated in the record to have an effect upon her ability to engage in basic work activities.

**Credibility Determination**

Claimant contends the ALJ mischaracterized some of her activities of daily living. This Court has reviewed Claimant's testimony in light of the ALJ's findings and do not find significant changes in her stated activities. (Tr. 21-22). It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3. The ALJ proceeded through an analysis of Claimant's testimony and the conflicting evidence which shadowed its reliability. No error is found in his credibility evaluation.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 30th day of March, 2015.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE